IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

MARK A. CHRISTESON,                     :
        *Appellant/Petitioner*,         :
                                   :         No.: 14-3389
        v.                          :
                                     :         CAPITAL CASE
DONALD P. ROPER, Superintendent,        :
Potosi Correctional Center,             :
         *Appellee/Respondent*.          :
_____ :

## MOTION FOR STAY

## PENDING APPEAL OR REMAND FOR EVIDENTIARY HEARING

The execution of Mark Christeson, Appellant, is scheduled for 12:01 a.m. CDT on October 29, 2014.

For months, Appellant has sought representation by conflict free counsel. Present appointed counsel's conflict arises from their failure to meet the statute of limitations for filing Appellant's petition for a writ of habeas corpus and their subsequent deceptions about their failure, which preyed on Mr. Christeson's mental impairments. To date, their malfeasance and deceptions have insulated Appellant's case from federal review. Despite Appellant, through undersigned counsel, having repeatedly brought the conflict of interest to the district court's attention, the district court has refused to appoint conflict free counsel and has declined to even address whether a conflict exists. *Martel v. Clair*, 132 S. Ct. 1276, 1284, 1286 (2012) ("the court would have to appoint new counsel if the first lawyer developed a conflict or abandoned the client.").

Instead, in finally ruling on whether the district court judge limited its analysis to whether his appointed, conflicted counsel had abandoned him, the timing of the motions for

substitution, and his opinion about capital litigation. In so doing, the court below failed to address the conflict of interest, a sufficient basis for substitution. It also misconstrued the facts relevant to its analysis. Appellant seeks a stay of his execution so that this Court can consider an appeal from the district court's order. In the alternative, he seeks a stay with a remand with instructions to conduct discovery and to hold a hearing on whether substitution is required.

## I. Statement of the Case

On October 21, 2014, Appellant filed his Renewed Motion by *Pro Bono* Counsel for Substitution of 18 U.S.C. §3599 Appointed Counsel ("Renewed Motion"). (R100).[1] On October 22, 2014, the district court denied the Renewed Motion. (R102).

The Renewed Motion got to the district court by a tortuous course of litigation since May 23, 2014. On that date, undersigned counsel filed a Notice by Friends of the Court of Petitioner's Need for Substitution by Conflict-Free Counsel ("Notice by Friends"). (R62). Undersigned counsel, at that juncture, did not appear as Mr. Christeson's counsel; rather, they were "Friends of the Court in Behalf of Petitioner." (R62 at 34). The Notice by Friends requested that the district court "appoint conflict-free and qualified capital habeas counsel in order to investigate and prepare a Motion pursuant to Rule 60(b) presenting the grounds for equitable tolling." (*Id.*). In lodging the request in behalf of Mr. Christeson's interests, undersigned counsel expressed their qualification, availability, and willingness to accept appointment in substitution of conflicted counsel under Mr. Christeson's statutory right to conflict-free counsel under 18 U.S.C §3599. (*Id.* at 31-33).

---

[1] The documents before the District Court are referred to by their respective docket numbers. For example, Renewed Motion by *Pro Bono* Counsel for Substitution of 18 U.S.C. §3599 Appointed Counsel is docketed at 103.

2

### A. Invitation by Appointed Counsel Led to Discovery of Grave Conflict Against Mr. Christeson

Undersigned counsel became involved in Mr. Christeson's case upon the solicitation by court-appointed counsel, Messrs. Butts and Horwitz, after April 7, 2014, when the Missouri Supreme Court had issued a show cause order to Mr. Christeson for an execution date. Butts and Horwitz sought consultation concerning the applicability of equitable tolling to the limitations period that they missed by nearly four months in 2005 when they filed the federal petition that, after briefing on timeliness, the district court dismissed on January 31, 2007 as untimely, noting "Christeson does not argue that extraordinary circumstances in this case justify equitable tolling." (R52 at 3). The district court thus dismissed the petition with no merits review of the constitutional violations in Mr. Christeson's case. (R52). On May 29, 2007, this Court denied a certificate of appealability. (R56).[2]

---

[2] Judge Whipple appointed Butts and Horwitz on July 2, 2004 (R5), and thereafter authorized expert funding for neuropsychiatric evaluation (R8.). Butts and Horwitz never retained an expert (of any kind). Appointed counsel proceeded to abandon Mr. Christeson as his one-year federal habeas corpus limitations period approached its end on April 10, 2005. The lawyers, in fact, did not even meet Mr. Christeson for the first time until more than six weeks after their filing deadline had passed. Over two months after that meeting, and nearly four months after the statute of limitations had lapsed, the lawyers filed a 28 U.S.C. §2254 petition on August 5, 2005 consisting of a smattering of claims hastily assembled from Mr. Christeson's direct review and just 52 pages in length. Although the appointed attorneys obtained authorization for a neuropsychiatric expert at the outset of their appointment based on claims raised in state court, they never retained one. The federal petition raised just one claim from the dozens of cognizable claims exhausted by Missouri public defenders in Mr. Christeson's state collateral review proceedings. In those state collateral review proceedings, the Missouri Supreme Court appointed David Darnold as a "Senior Judge" for the single purpose of presiding over Christeson's post-conviction motion. Mr. Darnold had overseen Mr. Christeson's trial but lost re-election shortly afterward. Thus, the newly elected circuit judge whom the Missouri voters had chosen to replace Darnold did not hear Mr. Christeson's post-conviction claims. Senior Judge Darnold disposed of the post-conviction case by signing and dating—without even editing for typos—a 170-page order drafted entirely by the Attorney General's Office. The Missouri Supreme Court affirmed Senior Judge Darnold's

3

On April 15, 2014, Butts wrote Mr. Christeson a letter apprising him of the Missouri

Supreme Court's April 7 show cause order, stating that the:

> request by the State of Missouri [sic] does not mean that an
> execution date will be set in your case anytime in the near
> future. As you are no doubt aware, counsel for most of the other
> *Zink* [lethal injection federal] litigation plaintiffs have received
> similar requests within the past few days. It appears that the
> State of Missouri [sic] is doing nothing more than
> administratively reviewing all of the capital cases pending in the
> state.

(R64-3).

At the time Butts wrote this letter, Butts and Horwitz's other client under a death

sentence, William Rousan, was set to be executed eight days later. His execution had been

set after the issuance of a show cause order on January 29, 2014. (*State v. Rousan*, Mo. S.Ct.,

No. SC79566.) In fact, Missouri did execute Mr. Rousan on April 23, 2014.

On May 4, 2014, at the behest of Butts and Horwitz, undersigned counsel traveled to

St. Louis and met Mr. Christeson in the Potosi Correctional Center. Undersigned counsel

learned from Mr. Christeson that he did not understand that his federal habeas corpus

application had been dismissed in January 2007 as untimely filed by Butts and Horwitz in

August 2005. (R62 at 11)  Mr. Christeson believed that his "appeals" were ongoing and that

he was "still in court." He expressed that he had only a handful of interactions with Butts and

---

order. After briefing on the statute of limitations in the federal court, Judge Whipple, on
January 31, 2007, dismissed the federal petition as untimely, noting that "Christeson does not
argue that extraordinary circumstances in this case justify equitable tolling." (R52 at 3). The
District Court thus conducted no review of the constitutional violations in Mr. Christeson's
case. On May 29, 2007, the Eighth Circuit denied a certificate of appealability. Among the
grounds for constitutional relief that could be considered in a first federal habeas corpus
review are claims deriving from a staggering array of sexual victimization, abuse, and
exploitation from Mr. Christeson's infancy through his first 18 years of life in squalor and
incestual pathology.

Horwitz since 2005. It was apparent to undersigned counsel from this first visit that Mr. Christeson had significant cognitive impairments. After further interaction, Mr. Christeson's severe impairments are unmistakable.

Mr. Christeson believed that his "appeals" were ongoing and that he was "still in court." He expressed that he had only a handful of interactions with Butts and Horwitz since 2005. It was apparent to undersigned counsel from this first visit that Mr. Christeson had significant cognitive impairments. After further interaction, Mr. Christeson's severe impairments are unmistakable. He displays marked deficits in written and verbal communication and severe impairments in working memory and concentration. He suffers chronic and severe headaches. Mr. Christeson was in special education throughout his schooling. He nonetheless received primarily failing grades. Childhood IQ testing indicates that Mr. Christeson's scored in the mid-80's. However, his school achievement tests are significantly lower, with scores in the second and third percentile. His performance dropped dramatically between elementary school and junior high, from low-average in the third grade to the first percentile in seventh grade. In recognition of Mr. Christeson's impairments, his federal counsel initially obtained court funding for a neuropsychological evaluation. However, they failed to retain any experts or conduct even rudimentary investigation.

Fellow prisoners have attested to his inability to understand legal matters and to communicate and recall information relating to his case as well as his difficulty in accessing legal assistance and isolation within the prison. One observed that Mr. Christeson "simply does not have a strong mental constitution. He has a low mental aptitude." Exhibit 2 at 2, No. 14-2896, Oct. 14, 2014. As to Mr. Christeson's legal case, his friend stated that:

> Mark could remember the first names of his trial attorneys but did not have any recollection of their last names. When I asked, Mark could not recall the names—first or last—of his appellate lawyers and his Rule 29.15 Motion lawyers. . . . While Mark could focus on [a] few parts of his trial, he could not tell me anything about his appeal or his Rule 291.5. I came to the conclusion that he just did not have what it took mentally to understand his legal situation.

*Id.* at 3, ¶¶14, 16. Another prisoner noted Mr. Christeson had a "difficult time communicating about his case" and that he had to "rewrite" Christeson's requests for assistance in order for them to "make sense." Ex. 3 at 1, ¶4, No. 14-2896, Oct. 14, 2014. Another friend recalled that Mr. Christeson requires special attention in dealing with his legal issues:

> On a scale from one to ten on the ability to comprehend, Mark is a two. He's dumb when it comes to anything legal, and I don't say this to be rude . . . Mark thought he was still in his 'appeal period,' but it turns out that they were over and he had no understanding of this. He really needs for things to be drummed into his head.

Ex. 1 at 1, ¶5, No. 14-2896, Oct. 14, 2014.

Additionally, counsel learned that in November 2000, Mr. Christeson was brutally attacked by two prisoners and sustained serious head injuries. According to prison records, Mr. Christeson sustained contusions to his forehead above his left eye and the right side of his head and lacerations to his let eyebrow which required stitches. R96-1 at 7. He also sustained multiple lacerations to his mouth and inner lips. *Id.* At some point during the attack, he lost consciousness. Mr. Chriesteson was admitted to the infirmary and placed on twenty-four hour observation. He was then transferred to protective custody, for his own safety, where he remained indefinitely lasting at least eighteen months.

6

On May 5, 2014, undersigned counsel met with Butts and Horwitz in the latter's office in Chesterfield, Missouri for the express purpose of addressing their ethical and legal conflicts of interest with Mr. Christeson and, specifically, to review any and all files reflecting their representation of Mr. Christeson—especially correspondence and client interview memoranda. (R62 at 11). Instead, Butts and Horwitz made available only prior counsels' files (those of Missouri public defender teams for trial, direct appeal, and state post-conviction), and refused, despite repeated restatements of the request throughout the day, to supply any correspondence or any other aspect of their own files. (*Id.*).

Before traveling to St. Louis, undersigned counsel accepted Butts and Horwitz's request to assist in preparing Mr. Christeson's response to the April 7 show cause order, which was due by Wednesday, May 7, 2014, so that counsel would avoid unwittingly compromising Mr. Christeson's ability to return to federal habeas court. During the May 5, 2014 meeting, all had agreed that undersigned counsel would review the response prior to Butts and Horwitz's filing in the Missouri Supreme Court. But appointed counsel ignored undersigned counsel's reminder of that agreement and did not circulate the response before filing it in the high court. Undersigned counsel emphasized that appointed counsel must not take factual positions as to their own diligence or the circumstances otherwise surrounding the late-filed federal petition, given that they would be witnesses in any future hearing or litigation concerning equitable tolling.

Nevertheless, on May 6, 2014, Butts and Horwitz filed a response to the show cause order that took positions adverse to Mr. Christeson. By emphasizing their own purported diligence and concealing their actual conduct and performance, appointed counsel appear to

7

have misled the Missouri Supreme Court and represented procedural facts surrounding the circumstances of their untimely habeas petition in a self-interested manner.

Butts and Horwitz's response did, however, acknowledge the inherent conflict facing them in relation to prospective equitable tolling litigation, stating that "[u]nwaivable ethical and legal conflicts [concerning equitable tolling] prohibit [appointed] counsel from litigating these issues in any way." (R62-1 at 12-13). Further, Butts and Horwitz submitted:

> Conflict free counsel must be appointed to present the equitable tolling question in federal district court. It is anticipated that the aforementioned [unnamed] outside counsel will expeditiously present the matter of equitable tolling to the federal district court, and upon appointment, litigate the availability of federal review as to Mr. Christeson.

(*Id.*).

## B. Notice by Friends Alerted the District Court to Appointed Counsel's Conflict Against Mr. Christeson

The foregoing conduct of Butts and Horwitz precipitated the filing on May 23, 2014 of the Notice by Friends. (*Supra*; R62). Therein, undersigned counsel informed the district court of Butts and Horwitz's conflict of interest. The Notice by Friends requested appointment of conflict-free counsel and a hearing to address whether Christeson was entitled to equitable tolling. (*Id.* at 26). It sought substitution by conflict-free counsel "in order to investigate and prepare a motion pursuant to Rule 60(b) presenting the grounds for equitable tolling." (*Id.* at 34). In connection with this requested substitution, the Notice by Friends sought a scheduling order for the prospective Rule 60(b) motion, an order to Butts and Horwitz to preserve their file and to produce it to substitution counsel, and to grant discovery to substitution counsel in connection with the equitable tolling issues. (*Id.*).

8

Further, undersigned counsel expressed their qualification, availability, and willingness to accept substitution as Mr. Christeson's counsel.

On May 27, 2014, the district court *sua sponte* redocketed the Notice as a Motion for Appointment and ordered the state and conflicted counsel to respond. (R63). The district court also noted that undersigned counsel were from Philadelphia and New York and, in any event, it would not appoint out of state counsel to represent Mr. Christeson because of cost concerns. On June 3, 2014, undersigned counsel filed a Motion for Reconsideration, arguing that it was inappropriate for conflicted counsel to comment on their own conflict and offering not to charge the court for travel fees and expenses. (R64).

After several extensions, on June 16, 2014, Butts and Horwitz filed a Response to the Court's Order. (R73). Appointed counsel emphasized their own diligence in filing the petition (four months late) and attempted to rebut the assertion that they misled their client about his federal petition's dismissal by betraying the dates and content of attorney-client communications between 2005 and 2014. Further, appointed counsel appear to credit the Notice by Friends with putting them on notice of "the possible existence of a mental health or psychological issue" (notwithstanding their initial–and unused–authorization for expert services and the inclusion in the state record of neuropsychiatric issues, *supra* at n.1). (R73 at 17). To that end, Butts and Horwitz then misapplied *Holland v. Florida* to Mr. Christeson's case, patently undermining the pursuit of equitable tolling of the statute of limitations. (*Id.* at 18-19).

Appointed counsel's pleading asserted that "counsel herein have contacted a psychologist . . . in order to arrange for a psychological/mental health evaluation of Mr. Christeson. Mr. Christeson has advised counsel herein that he will participate in a

9

psychological/mental health evaluation." (*Id.* at 17). It was subsequently determined that appointed counsel had not, in fact, broached this matter at all with Mr. Christeson prior to making that representation to the district court. (R77 at 3). Further, Butts and Horwitz did not so engage any expert in the months after this filing.

On July 10, 2014, the district court summarily denied the "Motion to Appoint Counsel" and ordered that Butts and Horwitz "shall continue to represent Petitioner." (*Id.* at 2).

### C. Mr. Christeson's First Appeal

On August 5, 2014, undersigned counsel filed a Motion to Substitute, addressing the fact that the district court's ruling denying a "Motion to Appoint" mischaracterized the matter of substitution that had been before the court pursuant to the Notice by Friends. (R80).

On August 11, 2014, undersigned counsel (Ms. Merrigan) entered her limited appearance in the district court on Mr. Christeson's behalf pursuant to Mo. Prof'l Conduct Rule 4-1.2(c), (R81), for the limited purpose of appealing from the July 10, 2014 order. (R81). This Court docketed the appeal on August 12, 2014, under Appellate Case 14-2896. On August 18, 2014, a week after jurisdiction over the aspects of the case in question in the July 10, 2014 order was conferred to this Court by the Notice of Appeal, the district court entered an order denying, for lack of jurisdiction, the August 5, 2014 Motion for Substitution and also the August 11, 2014 Entry of Appearance. (R86).

On August 15, 2014, Respondent moved to dismiss the appeal, raising three grounds in as many paragraphs. Mr. Christeson timely responded on August 25, 2014. On September 8, 2014, the Court of Appeals *sua sponte* directed the parties "to address whether Jennifer Merrigan and Joseph Perkovich have standing to appeal." Mr. Christeson timely filed the

10

ordered briefing on September 18, 2014. The following day, the Missouri Supreme Court entered its order setting Mr. Christeson's execution for October 29, 2014.

On September 5, 2014, Ms. Merrigan also filed a Notice of Limited Appearance of Counsel in the Missouri Supreme Court, alerting the high court to the pendency of the foregoing litigation in this Court.

On Friday, September 19, 2014, the Missouri Supreme Court entered Mr. Christeson's execution warrant for 12:01 a.m. CDT, on October 29, 2014. On Monday, September 22, 2014, Mr. Christeson, through undersigned counsel, docketed a notice in this Court of the Missouri Supreme Court's execution warrant. The next day, Respondent filed a notice by the State of Missouri of the same warrant.

On September 29, 2014, Respondent filed his ordered briefing on standing. Mr. Christeson moved for leave to reply supplying points and authorities in reply on October 1, 2014 and requesting expedited briefing in light of the pending execution date. At the instruction of the clerk, Mr. Christeson refiled, lodging a discrete motion for leave and a separate reply brief of four pages on October 3, 2014. On October 8, 2014, the Court granted leave and filed the reply. On October 14, 2014, Mr. Christeson moved in this Court for a remand to the district court for an evidentiary hearing based on several declarations obtained from inmates very familiar with Mr. Christeson. Also on October 14, Mr. Christeson moved for leave to file *ex parte* supplemental argument relating to conflicted counsels' *ex parte* filings in this district court made after the Missouri Supreme Court had set Mr. Christeson's execution date by its order of September 19, 2014.

On October 15, 2014, this Court entered an unsigned order stating, in its entirety: "The court orders that this appeal be dismissed for lack of jurisdiction because attorneys

11

Merrigan and Perkovich lacked standing in the district court. The motions by Merrigan and Perkovich for remand and for leave to file and ex parte supplemental argument are denied as moot."

### D. Mr. Christeson's Corrects the Jurisdictional Defect Via This Court's Order to District Court to Permit Re-filing and Appeal

The next day, on October 16, 2014, Ms. Merrigan filed her Amended Entry of Appearance before the district court for the "limited purpose of moving the Court by her simultaneously filed Motion By *Pro Bono* Counsel For Substitution Of 18 U.S.C. §3599 Appointed Counsel." (R95). She noted that Appellant "qualifies for such limited representation under Prof'l Conduct Rule 4-1.2(d)(2) because counsel is representing him in her institutional capacity with the Saint Louis University School of Law." (*Id.*).

On Friday, October 17, 2014, the district court entered an order near the close of business denying the Motion for Substitution for lack of jurisdiction, noting that this Court had not yet entered its mandate. It, however, also entered the following:

> Assuming, *arguendo*, that the Court has jurisdiction, the Motion is DENIED for the reasons previously stated by the Eighth Circuit, this Court, by Petitioner's counsel, and by Respondent. The Court further finds that Merrigan's duplicative Motion is an attempt to improperly delay the proceedings in this case. Absent an Order from this Court or from the Eighth Circuit, Merrigan and Perkovich are prohibited from filing any additional documents in this case. Merrigan may, however, file a notice of appeal of this Order.

(R97).

Shortly after the district court entered the  on October 17, this Court formally issued its mandate pursuant to Fed. R. Civ. P. 41(a).

12

In the evening of October 17, undersigned counsel filed in this Court a Request for Order Directing the District Court to Accept Filing. The Request sought relief from this Court because of the district court's foregoing order proscribing Ms. Merrigan from filing any further pleadings other than a notice of appeal of that order (which would be fruitless since the district court had ruled it lacked jurisdiction at that point).

On Monday, October 20, 2014, Respondent filed an opposition to the foregoing Request. The next morning, on October 21, 2014, Mr. Christeson filed a Reply to the State's Opposition to Petitioner's Request for Order Directing the District Court to Accept Filing, addressing, *inter alia*, Respondent's accusations of Mr. Christeson's delay in the proceedings by pointing out that the substitution issue was presented to the district court in May, long before an execution date was set and it is Respondent who has sought two separate extensions of time before filing court ordered briefing. Later on October 21, the Court "ordered that Attorney Jennifer Merrigan is permitted to file a renewed motion for substitution of counsel in the District Court." Immediately that same day, Ms. Merrigan did so, filing her Renewed Amended Entry of Appearance (R99), and then the Renewed Motion by *Pro Bono* Counsel for Substitution of 18 U.S.C. §3599 Appointed Counsel (R100), which the district court denied by an order the next day, on October 22, 2014, *supra*. (R102).

Pursuant to Mr. Christeson's Notice of Appeal (R103), the district court's denial is now pending before this Court.

## II.     Mr. Christeson is entitled to a stay of execution.

A stay of execution is warranted where there is a "presence of substantial grounds up which relief might be granted. *See Barefoot v. Estelle*, 463 U.S. 880 (1983). Mr. Christeson meets this standard. As discussed below, Mr. Christeson has made a prima facie showing of a

13

conflict of interest of his federal appointed counsel.  To date, they have actively litigated against him; defending their own diligence at the expense of Mr. Christeson and in violation his attorney client privilege.  Because the court's order was silent as to the conflict of interest and because the district court refused to hold a hearing to determine whether there was a conflict, this Court should grant a stay.

### A.   Substitution of counsel is warranted

In *Martel v. Clair*, the Supreme Court held that federal district courts should substitute counsel for capital habeas corpus petitioners where the "interests of justice" require it.  *Martel v. Clair*, 132 S.Ct. 1276, 1284 (2012).  The Court explained that the "interests of justice" inquiry was "a peculiarly context-specific inquiry," where the "timeliness of the motion [for substitution]; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint" are all relevant to determining whether substitution is required.  *Id.* at 1287.  Nonetheless, the Court made it clear that a "court would have to appoint new counsel if the first lawyer developed a conflict with or abandoned the client."  *Id.* at 1286.

#### a. Counsel's egregious misconduct, in abandoning and then deceiving their mentally impaired client constitutes a conflict of interest.

Mr. Christeson has made substantial allegations that his counsel are operating under an actual and unwaivable conflict of interest, in that they abandoned him, filed his petition 117 days out of time, and then actively worked to conceal their conflict from him. He has also made a substantial showing that he suffers from severe cognitive impairments which his lawyers took advantage of in actively misrepresenting to him the status of his case.  Though

14

the district court purported to apply the "interest of justice" standard of *Martel v. Clair*, 132 S. Ct. at 1284, it failed to even address these allegations. Instead, the court's order focuses solely on the narrow allegation of abandonment.

The district court's finding that appointed counsel did not abandon Mr. Christeson misconstrues Mr. Christeson's argument regarding abandonment. Mr. Christeson alleged that his appointed counsel abandoned him for the duration of his statute of limitations under 28 U.S.C. §2244(d)(1). In fact, the record supports that allegation. In their own pleadings (relied upon by the district court in its order) appointed counsel admit to not meeting Mr. Christeson until six weeks *after* the deadline of the federal petition. (R73 at 8). Over two months after that first meeting, the appointed attorneys filed a woefully late and inadequate petition (having retained no experts, undertaken no investigation, and filed no appendix or exhibits). According to the appointed counsel's own admissions, their first contact with Mr. Christeson was on May 27, 2005, *after* his statute of limitations had expired.

While the court's substitution inquiry ends with abandonment, Mr. Christeson's allegations do not. Mr. Christeson made substantial and supported allegations that his counsel deceived him, actively misrepresenting the status of his case to him. The evidence establishes that until recently, Mr. Christeson believed that his federal habeas corpus case was ongoing, that he only recently learned that his federal appointed counsel missed his statute of limitations, potentially foreclosing federal review, and that his status in the prison severely undermined his ability to obtain help from fellow prisoners. He may be entitled to equitable tolling of the statute of limitations or whether his appointed counsel were conflicted against him and thus must be replaced.

Appellate Case: 14-3389   Page: 15   Date Filed: 10/23/2014 Entry ID: 4209580

Butts and Horwitz actively led Mr. Christeson to believe his case was ongoing, pointing to pending lethal injection litigation led by other attorneys. Statements from prisoners incarcerated with Mr. Christeson support such a finding: "There are reasons Mark wouldn't know that his appeals were over. To begin with his lawyers only discussed the lethal injection case, not Mark's criminal case. I had to tell Mark that the two cases were separate and that the real case he needed to worry about was his own." Exhibit 1, ¶4, No. 14-2896, Oct. 14, 2014. "Mark never said anything . . . to suggest that he understood this basic fact that his federal case was dismissed years ago." Ex. 2 at 4, ¶22 No. 14-2896, Oct. 14, 2014. "Marks' . . . attorney's weren't giving him the information he needed." Ex. 1 at 3, ¶12, No. 14-2896, Oct. 14, 2014. "[H]is old court-appointed lawyers, Phil and Eric . . . had never done anything to help him." Ex. 2 at 3, ¶20 No. 14-2896, Oct. 14, 2014. These statements demonstrate that Butts and Horwitz exploited Mr. Christeson to cover up their failings in a case that could not have more serious consequences.

Further evidence of their deception is found in their own correspondence with Mr. Christeson. On April 15, 2014, one week after the Missouri Supreme Court issued a show cause order in his case, Conflicted Counsel wrote to Mr. Christeson apprising him of his show cause order and stating that "the State of Missouri is doing nothing more than administratively reviewing all of the capital cases pending in the state." (R65-3) (Letter from Eric Butts to Mark Christeson) (emphasis added). This representation is blatantly false; at the time Butts wrote it, five executions had been carried out in as many months and his own client, William Roussan, was scheduled to be executed (and was executed) eight days later. Butts' representation to Mr. Christeson is also at odds with their filings in the District Court. (R73 at 2) ("In discussions with Ms. Merrigan, counsel clearly stated that he and Mr.

16

Horwitz were greatly concerned about Mr. Christeson's case, and given the fact that this was the third time that the Missouri Supreme Court had asked for a response as to why an execution date should not be set, counsel believed that in the foreseeable future, Mr. Christeson may, in fact, receive an execution date.").

Even in the district court, as Mr. Christeson argued for substitution of counsel, his appointed lawyers demonstrated their conflict, arguing in defense of themselves and against him, even betraying attorney client privilege in order to argue in favor of their own diligence. Such actions, according to ethicist Lawrence Fox, were in violation of the Model Rules of Professional Conduct, Rule 1.6. Mr. Fox's Report found that Butts and Horwitz:

> have revealed privileged attorney-client communications in support of their self-serving argument that they have acted as competent, diligent lawyers throughout Mr. Christeson's representation. Rather they violated the trust Mr. Christeson reposed in them by disclosing the confidential information without notice to the client, let alone seeking the client's informed consent.

(R77-1) (Report of Lawrence Fox).  The district court's order made no mention of Mr. Fox's Report, despite the fact that the court received the Report in June.

Finally, Butts and Horwitz, admitted that they are indeed operating under a conflict of interest. In their Response to Show Cause, they stated that:

> Outside counsel are essential to a *Holland* inquiry, and said counsel are in the process of conducting the review. Because counsel herein would be essential witnesses to factual questions indispensable to a *Holland* inquiry, there may be ethical and legal conflicts that would arise that would prohibit counsel from litigating issues that would support a *Holland* claim. Unwaivable ethical and legal conflicts prohibit undersigned counsel from litigating these issues in any way. *See Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978).

17

(R62-1). Although Mr. Christeson proffered that motion as an exhibit to his initial notice, the district court's order does not address it.

In addition to sufficiently alleging misconduct by Butts and Horwitz, Mr. Christeson also made substantial showing of his cognitive impairments, which include deficits in written and verbal communication and severe impairments in working memory and concentration. He suffers chronic and severe headaches. School records indicate that Mr. Christeson was placed in special education, where he remained throughout his schooling. He nonetheless received primarily failing grades and school achievement test scores in the single digits.

In apparent recognition of Mr. Christeson's impairments, his federal counsel initially obtained court funding for a neuropsychological evaluation. However, they failed to retain any experts or conduct even rudimentary investigation and have admitted that they have never raised a claim pertaining to Mr. Christeson's impairment or "pursued a mental health or psychological assessment of Mr. Christeson." (R73 at 18). They further admitted that their failure to do so could potentially constitute ineffective assistance and a conflict of interest. *Id.* ("Initially, the potential of a conflict exists in that counsel did not pursue a psychological or mental health evaluation of Mr. Christeson, or present a mental health claim in his habeas petition…"). Nonetheless, the district court's order is silent as to Mr. Christeson's impairments and their potential bases for a conflict of interest.

Mr. Christeson's substantial impairments and isolation, together with the deception of Butts and Horowitz, are directly relevant to whether he should have received new counsel, discovery, and a hearing to develop his claim of equitable tolling. After the Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631 (2010), at least four federal circuits have held that a petitioner's inability to understand and protect his own legal interests can warrant

18

tolling of the statute of limitations that Butts and Horwitz missed. *Davis v. Humphreys*, 747 F.3d 497, 499-500 (7th 2014) (Easterbrook, J.); *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011); *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010); *Riva v. Ficco*, 615 F.3d 35, 40 (1st Cir. 2010). At least two others had held the same before *Holland* was decided. *See Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304, 1309-10 (11th Cir. 2009). These holdings are in keeping with the more general rule that federal statutes of limitations may be tolled by the mental incompetence of a person who would otherwise be barred by them. *See Barrett v. Principi*, 363 F.3d 1316, 1319-20 (Fed. Cir. 2004) (collecting cases). This case is even more compelling where Mr. Christeson, because of his impairments, was preyed upon and defrauded by the very lawyers appointed to represent him. Nonetheless, the court failed to even mention Mr. Christeson's impairments.

### b. Arguing One's Own Negligence and Abandonment Presents a Conflict of Interest.

In four recent cases, the United States Supreme Court has addressed the relationship between post-conviction counsel's performance and the availability of relief. *See Holland v. Florida*, 560 U.S. 631 (2010); *Maples v. Thomas*, 132 S.Ct. 912 (2012); *Trevino v. Thaler*, 133 S.Ct. 1911 (2013); *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). As discussed *supra*, the Court has also recently explained that a disabling conflict of interest meets the "interest of justice" standard for substituting counsel in capital habeas corpus cases. *Martel*, 132 S.Ct. at 1284. This case presents a straightforward application of the intersection of these lines of authority: substitution of counsel is required where there is a conflict of interest based on the Hobson's choice of either arguing that the attorney's own representation at an earlier state of

19

litigation was ineffective or not making such an argument, depriving the client of federal review.

In *Holland v. Florida*, the Court addressed "whether the AEDPA's statutory limitations period may be tolled for equitable reasons." 560 U.S. at 645. The case arose because the statute of limitations was missed by a death sentenced inmate who had sought a writ of habeas corpus. *Id.* The Court held that an attorney's "professional misconduct . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." *Id.* at 651. The high Court remanded the case to the Court of Appeals "to determine whether the facts in [the] record entitle Holland to equitable tolling or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail." *Id.* at 654. The Court, however, was clear: the professional conduct of Mr. Holland's federal counsel could provide an equitable basis for tolling the missed statute of limitations.

In *Maples v. Thomas*, the Court addressed whether state post-conviction counsel's abandonment of their client could provide cause to excuse a procedural default that would have otherwise prevented review. 132 S.Ct. at 916-17. There, Mr. Maple's lawyers failed to file an appeal that was required to exhaust available state remedies. *Id.* His lawyers left their law firm without withdrawing from the case and without informing their client or the court of their departure. *Id.* Having received no notice of their departure, Mr. Maples believed he was being represented when the time for the appeal lapsed. *Id.* The Supreme Court held that that the abandonment by Maples' lawyers constituted "cause" to excuse the relevant procedural default. *Id.* Thus, state post-conviction counsel's performance is potentially

20

relevant to the availability of federal review where claims have been procedurally defaulted because of abandonment of state post-conviction counsel.

In *Martinez v. Ryan*, the Court addressed whether the ineffectiveness of his state post-conviction counsel could serve as cause to excuse his default of a claim of ineffective assistance of his trial counsel. 132 S.Ct. at 1313. The Court held that where state post-conviction provided the first opportunity to present such a claim, the ineffectiveness state post-conviction counsel in failing to bring a claim of trial counsel's ineffectiveness could provide cause for excusing a procedural default of the claim. *Id.* at 1320. In *Trevino v. Thaler*, the Court held that *Martinez* extended to state post-conviction regimes that do limit ineffective assistance of counsel claims to post-conviction, but make it "virtually impossible" to raise them on direct review. 133 S.Ct. 1911, 1918 (2013). Both cases make state post-conviction counsel's performance relevant to the availability of federal review.

It is against this backdrop that the federal courts have addressed the applicability of *Martel v. Clair*, 132 S.Ct. 1276 (2012). Those courts have all held that the "interests of justice" require substitution of section 3499 counsel where that counsel is placed in the untenable position of either arguing their own prior representation was in some way deficient or risk depriving their client of federal review. *See Gray v. Person*, 526 F.App'x 331, 334 (4th Cir. 2013) ("We find that a clear conflict of interest exists in requiring Gray's counsel to identify and investigate potential errors that they themselves may have made"); *Juniper v. Davis*, 737 F.3d 288, 290 (4th Cir. 2013) ("[A]s in *Gray*, we find it ethically untenable to require [federal habeas] counsel to assert claims of his or her own ineffectiveness in the state habeas proceedings in order to adequately present defaulted ineffective-assistance-of-trial-counsel claims under *Martinez* in the federal habeas proceedings."); *Huebler v. Vare,* No.

21

3:05–CV–48, 2014 WL 1494271, at *2–3 (D. Nev. April 15, 2014) ("Following *Martinez,* current counsel thus is placed in a position of having to review the performance of a state post-conviction litigation team on which she worked—including as an attorney—to determine whether the team inadequately failed to raise additional claims.... Current counsel is under an obligation under Martinez to conduct such review, and she has a conflict of interest when doing so. That conflict of interest is real, actual and current.") (quoting *Bergna v. Benedetti,* No. 3:10–CV–389, 2013 WL 3491276, at *2 (D.Nev. July 9, 2013)); *accord Farnum v. Legrand,* No. 2:13–CV–1304, 2013 WL 5817033, at *3 (D.Nev. Oct. 9, 2013); *Ferguson v. Allen,* No. 3:09–CV–138, at *13 n. 15 (N.D.Ala. July 21, 2014). Being required to argue against one's own effectiveness is a conflict of interest.

The need for substitution is straightforward: "One could hardly expect that lawyer to argue his own ineffectiveness with any degree of conviction or persuasiveness. To make such an argument places a lawyer in the sharpest sort of conflict of interest." *Holmes v. Norris*, 32 F.3d 1240, 1240-41 (8th Cir. 1994) *summarily vacated en banc* 32 F.3d 1240 (8th Cir. 1994); *see Abbamonte v. United States,* 160 F.3d 922, 925 (2d Cir.1998) (observing that attorneys are "not inclined to seek out and assert [their] own prior ineffectiveness"); *Sasser v. Hobbs,* 735 F.3d 833, 852 (8th Cir.2013) (similar). Moreover, the high Court has recognized that a "significant conflict of interest" arises when the circumstances were such that the law firm's "strongest argument" on behalf of the client was that the firm had earlier abandoned the client." *Maples*, 132 S.Ct. at 925 n.8.

Here, Butts and Horwitz cannot reasonably be expected to argue their own misconduct. Such misconduct is relevant to a claim of equitable tolling that could allow the

Appellate Case: 14-3389    Page: 22    Date Filed: 10/23/2014 Entry ID: 4209580

federal courts, for the first time, to review Appellant's case. *Holland*, 560 U.S. at 645.[3] Instead of arguing in favor of Appellant's entitlement to relief, they have argued against it, exacerbating the conflict. They have argued in defense of their own diligence and lack of abandonment. Instead of recognizing these arguments for what they were—arguments in opposition to their client's interests—the court below specifically relied on them in denying the substitution motion. (R103) The conflict of interest presented in this case is stark, and the district court should have, on that basis, granted the Motion for Substitution. Thus, based on this conflict of interest alone, there is a strong likelihood of Mr. Christeson's success, and this Court should grant his request for a stay of execution. *Barefoot*, 463 U.S. 880.

Moreover, Mr. Christeson's substantial impairments and isolation, together with the deception of Butts and Horowitz, create a further likelihood of his success, and warrant a stay of his execution. They are directly relevant to whether he should have received new counsel, discovery, and a hearing to develop his claim of equitable tolling, but the district court did not even address them in its order. (R103)

Furthermore, the elements of Mr. Christeson's motion that the district court did address, missed the mark. The district court ruled Mr. Christeson's motion untimely because it was "not filed until 2014, and shortly before Petitioner's execution date." (4:04-CV-08004-DW, Oct. 22, 2014, ECF No. 102). While the initial motion alerting the court to a conflict and the need for substitution of counsel was filed in 2014, it was filed in May, over five months prior to Mr. Christeson's execution date and nearly four months before the date was

---

[3] Because Butts and Horwitz have consistently blocked undersigned from obtaining their files, including, for example, their correspondence with Appellant, it is impossible to know with certainty whether such a claim would lie. Nonetheless, their deception, together with Appellant's mental impairments, outlined *supra*, strongly suggest there may be a substantial claim.

Appellate Case: 14-3389     Page: 23     Date Filed: 10/23/2014 Entry ID: 4209580

even scheduled. (R62). Mr. Christeson has been diligently attempting to obtain a substitution of counsel to replace his federally appointed conflicted counsel for the past six months, that is, since the time he learned of their conflict of interest. Though the court faults Mr. Christeson for the seven year delay in moving for substitution, it is silent as to Mr. Christeson's allegations that the delay was because his appointed counsel actively misled him about the status of his appeal and that he was incapable, due to severe cognitive impairments, to assert his own rights until lawyers, asked by his appointed lawyers to visit him, met him and informed him that his federal case had been dismissed over seven years earlier.

The district court also found that conflicted counsel did not abandon Mr. Christeson, because, according to pleadings filed by appointed counsel, they "appeared on behalf of Petitioner in lethal injection cases and made other filings on his behalf" and "state that they have had meetings and conversations with Petitioner." (R102) (internal citations omitted). It is significant that these facts were taken directly from the pleadings of appointed counsel. First, they are further evidence of appointed counsel's conflict of interest; they were pled by appointed counsel in their own defense, at the expense of their client, and in violation of his attorney client privilege. See (R77-1) (Report of Lawrence Fox). Second, the court's rationale misconstrues Appellant's allegation of abandonment. Appellant alleged that appointed counsel abandoned him before the time that his habeas corpus petition was due in April 2005. Appointed counsel admit to not meeting him until six weeks *after* the deadline of the federal petition. Over two months after that first meeting, the appointed attorneys filed a woefully late and inadequate petition (having retained no experts, undertaken no investigation, and filed no appendix or exhibits) and then spent the next seven years lying to

24

their client about the status of his appeals (when they were not ignoring his queries), and strenuously arguing their own diligence at the clear expense of the client's legal interests. According to the appointed counsel's own admissions, their first contact with Mr. Christeson was on May 27, 2005, *after* his statute of limitations had expired.

Finally, the district court held that "granting the Motion would set an untenable precedent in death penalty cases. That is, outside attorneys can toll an execution date by simply waiting until the eleventh hour and then second-guessing the work of appointed counsel." (R102).

Mr. Christeson did not wait until the "eleventh hour" to initiate the present action. He initiated it as soon as he realized his appointed counsel's conflict of interest, literally within days of learning on May 4, 2014 that his federal case had been dismissed in 2005 due to counsel's abandonment at the time the petition was due. Mr. Christeson has been attempting for months to litigate this issue. Any delay since the initial filing in the district court is due to the repeated extensions sought by his appointed counsel and the state as well as the actions of the federal courts. Delay predating these proceedings is due to the conflict of interest of Mr. Christeson's federally appointed counsel and their attempts to cover up their own misconduct and take advantage of their client's mental incapacity.

The ruling below necessitates a stay of execution. Because there is a strong likelihood that Appellant will prevail on the merits if he receives a stay, this Court should stay Mr. Christeson's execution in order to either set a briefing scheduling and permit the full litigation of his appeal from the district court's order denying substitution of counsel or, in the alternative, grant a stay and remand to the district court for an evidentiary hearing on the existence of appointed counsel's conflict of interest against Mr. Christeson.

**B.     Mr. Christeson is entitled to an evidentiary hearing**

Despite being on notice of a conflict since May of this year, the district court did not hold a hearing, receive evidence, or appoint any independent counsel to review whether Appellant, may be entitled to equitable tolling of the statute of limitations or whether his appointed counsel were conflicted against him and thus must be replaced. The evidence establishes that until recently, Mr. Christeson believed that his federal habeas corpus case was ongoing, that he only recently learned that his federal appointed counsel missed his statute of limitations, potentially foreclosing federal review, and that his status in the prison severely undermined his ability to obtain help from fellow prisoners.

The district court did not discuss the conflict of interest in his order. Despite undersigned's repeated requests, Mr. Christeson has never received a hearing, discovery, or independent counsel even to assess whether he may be entitled to equitable tolling of his federal statute of limitations. Butts and Horwitz have acknowledged their ethical limitations on raising the bases for equitable tolling related to their own abandonment of Mr. Christeson. (R62-1). However, whether such bases are present in Mr. Christeson's case cannot be determined without access to the basic information essential for such an assessment, especially the file and correspondence from Butts and Horwitz to their client.

Their file is fundamental to Mr. Christeson's claim under *Holland v. Florida*, 560 U.S. 531 (2010) (establishing that equitable tolling may apply to AEDPA's statute of limitations under "extraordinary circumstances," including based on the unprofessionalism of appointed counsel) and their refusal to disclose his file to undersigned counsel (or to Mr. Christeson) has obstructed his ability to develop and litigate such a claim. Moreover, Butts

26

and Horwitz have continued to actively litigate against Mr. Christeson, defending their own diligence at his expense.

These extraordinary circumstances call out for a hearing with conflict free counsel. Here, "no lower court has yet considered in detail the facts of this case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Holland*, 560 U.S. at 653-54. Where, as here, the record is undeveloped with respect to extraordinary circumstances concerning the untimeliness of a petition, a district court hearing is necessary. *Id.* at 654.

Due process requires a full and fair opportunity to present evidence relevant to a claim of equitable tolling. *Cf. Panetti v. Quarterman*, 551 U.S. 930, 949 (2007) (due process requires "'fair hearing' in accord with fundamental fairness" where a substantial threshold showing of entitlement to *Ford* relief has been made). Such an opportunity necessarily includes a hearing and the opportunity to present evidence, neither of which has occurred here. *Id.*; *see also Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000) (reversing for further proceedings in a challenge to *clemency* procedures where only "minimal" due process protections apply).

Procedural due process also requires the opportunity to present evidence through attorneys who are not disabled by a conflict of interest which, as here, has led them to actively litigate *against* their own client. *See Holloway v. Arkansas*, 435 U.S. 475, 485-86 (1978) (describing conflict standard in Sixth Amendment context); *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976) (explaining that to determine whether a particular procedural due process right applies, courts consider the private interest affected, the risk of erroneous deprivation absent the safeguard, and the government interests). The U.S. government has

27

recognized as much, providing for counsel for death sentenced inmates. *See* 18 U.S.C. 3007(A); *Harbison v. Bell*, 129 S.Ct. 1481 (2009). The right to counsel means very little where that counsel is actively litigating positions that will hasten their client's execution. For this reason, the "interests of justice" require the substitution of counsel is where a "lawyer developed a conflict with or abandoned the client." *Martel v. Clair*, 132 S.Ct. 1276, 1286 (2012).

That is precisely the situation Mr. Christeson faces. Despite the acknowledgement from Butts and Horwitz that they suffer from a conflict of interest requiring their removal, they have repeatedly taken positions in service of their reputational interests and against Mr. Christeson's legal interests. To wit, they have claimed to have acted diligently despite also admitting that they did not even meet their client for the first time until more than six weeks after their deadline for filing his habeas petition had passed. They further insist they have been diligent throughout their appointment but in fact they have failed to keep their client apprised, in the most basic sense, of the status of the case.

Moreover, they have declined to provide undersigned counsel with access to their file, depriving undersigned of the information needed to assess whether a claim of equitable tolling may excuse the lack of timeliness. It is for these reasons that undersigned are seeking discovery, a hearing, and appointment of conflict free counsel for Mr. Christeson.[4] Due process, the "interests of justice," and common sense require as much. *Clair*, 132 S.Ct. at 1286; *see Matthews*, 424 U.S. at 335.

---

[4] In light of Mr. Christeson's preferences, undersigned's familiarity with him and his case, and their willingness to forgo reimbursement of travel expenses, appointing them would be sensible and efficient. Regardless of who is appointed, however, Mr. Christeson is entitled to conflict-free counsel who are able to meaningfully explore whether Butts and Horwitz abandoned him.

Appellate Case: 14-3389     Page: 28     Date Filed: 10/23/2014 Entry ID: 4209580

A hearing is warranted to evaluate their continuing and actual conflict.

**III.     Conclusion**

Mr. Christeson respectfully requests a stay of execution.  He also requests expedited

briefing or, in the alternative, remand for an evidentiary hearing.

Respectfully submitted,

s/Jennifer A. Merrigan
Jennifer A. Merrigan, MO Bar #56733
Adjunct Assistant Professor of Law
Saint Louis University School of Law
PO Box 63928
Philadelphia, PA 19147
jenmerrigan@gmail.com


Joseph J. Perkovich
Adjunct Assistant Professor of Law
Saint Louis University School of Law
PO Box 2171
New York, NY 10008
mail@jos.perkovich.name

Counsel for Appellant, Mark A. Christeson

Appellate Case: 14-3389     Page: 29     Date Filed: 10/23/2014 Entry ID: 4209580

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Stephen D. Hawke
Assistant Attorney General
P.O. Box 899
Jefferson City, Missouri 65102

Eric W. Butts
Attorney for Appellant
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101

Philip M. Horwitz
Attorney for Appellant
640 Cepi Drive, Suite A
Chesterfield, Missouri 63005

s/ Jennifer Merrigan
JENNIFER MERRIGAN

Appellate Case: 14-3389    Page: 30    Date Filed: 10/23/2014 Entry ID: 4209580