No. 14-3389
CAPITAL CASE
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**MARK A. CHRISTESON**
*Appellant/Petitioner*

v.

**DONALD P. ROPER,**
Superintendent, Potosi Correctional Center
*Appellee/Respondent*
_____

**BRIEF OF FORMER FEDERAL AND STATE JUDGES
AS *AMICI CURIAE* IN SUPPORT OF APPELLANT'S
MOTION FOR A STAY PENDING APPEAL**
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
THE HONORABLE DEAN WHIPPLE
Case No. 4:04-cv-08004
_____

John McAnnar
Carmody MacDonald P.C.
120 S. Central Ave.
Suite 1800
St. Louis, MO 63105
(314) 854-8662

Counsel For *Amici*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

BRIEF *AMICI CURIAE* ...................................................................................1

INTEREST OF THE *AMICI* ............................................................................1

ARGUMENT .....................................................................................................2

    I.    This Court Should Grant A Stay In Order To Address The Merits Of Appellant's Claim For Substitution Of Counsel. ............2

CONCLUSION ................................................................................................10

ADDENDUM: FULL LIST OF *AMICI CURIAE* ........................................ A-1

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

*Martel v. Clair*, 132 S. Ct. 1276 (2012) ..............................................................3

*United States v. Edelmann*, 458 F.3d 791 (8th Cir. 2006)....................................5

# BRIEF *AMICI CURIAE*

*Amici curiae* former federal and state judges respectfully submit this brief in support of appellant Mark Christeson's motion for a stay of execution.[1]

## INTEREST OF THE *AMICI*

*Amici* are a group of former federal and state judges.[2] They include trial and appellate judges, conservatives, liberals, and others from across the political spectrum and the nation—including the state of Missouri. Notwithstanding their diversity, *amici* share a deep familiarity with the judicial system and a strong interest in maintaining its fairness and public legitimacy. These values are never more salient than in capital cases, where judges have the particularly heavy responsibility to ensure that the process is beyond reproach.

The district court's ruling in this case undermines *amici's* interest in a fair criminal justice system. By denying appellant's request for substitution of counsel without a hearing—and indeed without even addressing the conflict of interest at the heart of this case—the district court implicitly endorsed the apparent abandonment and misconduct of appellant's appointed counsel. If the status quo holds, appellant will be executed without any meaningful federal

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, *amici* certify that no counsel for any party authored this brief in whole or in part, and that only the *amici* and their counsel provided funds used in preparation of this brief. This brief is accompanied by a motion for leave to file. Both parties have consented.

[2] A complete list of the *amici* appears as an addendum to this brief.

review of his death sentence, even though he has made a substantial showing that conflict-free counsel would be able to obtain equitable tolling and thus consideration of the merits of his § 2254 petition.

This case also raises a separate concern relating to the administration of the death penalty. As states, including especially Missouri, have moved to execute inmates on death row, both the bar and the bench have been taxed by the demands of the process. This strain is likely why appellant's appointed counsel—who clearly were not up to the task before them—were appointed in the first place. Cases, including this one, are falling through the cracks of the system. And when the stakes are this high, such failures unacceptably threaten the very legitimacy of the judicial process.

## ARGUMENT

**I.  This Court Should Grant A Stay In Order To Address The Merits Of Appellant's Claim For Substitution Of Counsel.**

Appellant's motion for a stay of execution should be granted. Although the interest of finality in capital cases is substantial, it cannot be allowed to trample the interest of fairness. Here, the district court denied appellant's motion for substitution of counsel—without a hearing—even though appellant has shown that his appointed attorneys have a conflict of interest that prevents them from pursuing his interests. What is more, the district court denied the motion without so much as mentioning the conflict itself—let alone finding that

2

it does not exist. That gap in the district court's opinion calls out for a response. Before the federal courts permit the state to execute appellant, they should at least *address* his most substantial arguments. Indeed, to permit an execution without further review would cast a pall over the process.

Beginning with the obvious point: the conflict of interest in this case is acute, acknowledged, and warrants substitution of counsel. Substitution is appropriate when it would serve the "interests of justice." *Martel v. Clair*, 132 S. Ct. 1276, 1281 (2012). There can be no doubt that a conflict of interest warrants substitution. In *Martel*, a defendant clashed with the state over the proper standard for a substitution motion. The state took the narrow view that substitution is only warranted in three circumstances: when the attorney lacks the requisite qualifications; when he has a disabling conflict of interest; and when he has completely abandoned the client. *See id. at 1284*. The Court rejected this extreme view and adopted a broader standard. *See id.* But of course, it never questioned that at least in the circumstances identified by the state, substitution serves the interests of justice.

In this case, a review of the record makes the conflict of interest clear. Appellant's appointed attorneys became his lawyers in July of 2004. They were due to file his § 2254 petition by April of 2005. But they did not even meet with appellant until approximately a month after that deadline. *See* Dist. Ct. ECF No.

3

73, at 8. They then filed the petition 117 days late—and compounded their error both by making a near-frivolous argument that they had timely filed the petition, and by refusing to argue for tolling. *See* Dist. Ct. ECF No. 52, at 3 ("Christeson does not argue that extraordinary circumstances in this case justify equitable tolling."). The petition was thus dismissed as untimely in 2007, and the district court refused to grant a certificate of appealability. *See id.*; Dist. Ct. ECF No. 59. Although they appealed that denial, appellant's appointed attorneys continued to argue that the petition had been timely filed. That argument failed. *See* Order, *Christeson v. Roper*, No. 07-1905 (8th Cir. May 29, 2007) (denying certificate of appealability). Counsel appear never to have entertained the possibility that by confessing their malpractice, they might have aided their client's case for tolling. Thus, the conflict arose.

In the intervening years, the conflict grew worse as appointed counsel failed to withdraw from the representation or to seek out alternate counsel who could present a tolling argument based on counsel's errors. They may also have concealed the scope of their error and its significance from appellant himself—and it is also possible that appellant's mental impairments would have made it difficult for him to comprehend those points even if they had been explained. *See* Appellant's Motion for Stay at 4-7.

4

Finally, in early 2014, appointed counsel asked other attorneys—from out of state—to assess the case generally. During that review, appointed counsel's errors were discovered and they were urged to withdraw to permit conflict-free counsel to address the issue of tolling. In filings before the Missouri Supreme Court, appointed counsel acknowledged that because their conduct would be placed under scrutiny in any discussion of tolling, "[c]onflict free counsel must be appointed to present the equitable tolling question in federal district court." *See* Dist. Ct. ECF No. 62-1 at 13; Appellant's Motion for Stay 7-8. That acknowledgment was astute: appointed counsel have an actual conflict of interest with appellant insofar as his ability to obtain tolling may depend upon scrutiny of their conduct. *See, e.g.*, *United States v. Edelmann*, 458 F.3d 791, 807 (8th Cir. 2006). Nevertheless, they refused to withdraw from the representation in order to clear the way for conflict-free counsel, and in fact refused to share their case files with the consulting attorneys.

In response to these events, on May 23, 2014, the outside attorneys who had reviewed appellant's case sought to file, as friends of the court, a notice to the district court informing it of the conflict and requesting the appointment of conflict-free counsel. *See* Dist. Ct. ECF No. 62. The thirty-four page notice detailed the procedural history of the case, appointed counsel's actions, the legal authorities demonstrating a conflict that warranted substitution of counsel,

5

and discussion of new evidence relating to appellant's mental state and capacity. *See id*. In further support of their motion, the attorneys delivered a report from noted legal ethics expert Larry Fox, who concluded that appointed counsel's conduct had been tantamount to "abject neglect." *See* Dist. Ct. ECF No. 77-1, at 4. Fox concluded that counsel not only failed to file appellant's petition in a timely manner, but they "sought to keep from view any of the evidence of their abandonment and their belated actions . . . ." *Id*. at 5.

The motion (and a subsequent reconsideration motion) was fully briefed by all sides. In their opposition, the appointed attorneys disputed that they had concealed information from their client, but acknowledged that "it may be appropriate for the Court to appoint new counsel for Mr. Christeson" to address conflicts of interest. Dist. Ct. ECF No. 75, at 2. They further acknowledged that if appellant's mental health is evaluated, that "that evaluation may well produce information that would give rise to a conflict in counsels' continued representation of Mr. Christeson." *Id*. The response thus did not deny that appointed counsel had a conflict—instead, it merely stated that "Counsel herein believes that the Court, following a reasoned and thorough review of the pleadings filed thus far, will make the appropriate decision." *Id*. at 3.

The district court denied the request to appoint conflict-free counsel on July 10, 2014 in a two-page order. *See* Dist. Ct. ECF No. 78. The order never

6

addresses the conflict of interest, but instead merely states that "it is not in Petitioner's best interest to be represented by attorneys located in New York and Pennsylvania." *See id*. at 1. The court therefore held that appellant's appointed attorneys would continue to represent him.

Christeson's appeal to this Court was dismissed on the ground that the attorneys seeking to represent him lacked standing to act on his behalf. On remand, counsel promptly cured that defect by executing a retainer agreement with appellant and filing a new motion for substitution of counsel. The district court denied that motion because this Court's mandate had not yet issued—and it further sought to prevent appellant's pro bono counsel of choice from filing any further papers in the court. *See* Appellant's Motion for Stay 10-12 (summarizing proceedings). This Court then ordered the district court to accept the filing of a new substitution motion, which was filed and, shortly thereafter, denied. *See id*. at 13; Dist. Ct. ECF No. 102. That denial gave rise to this appeal. During this appellate ping-pong, the state of Missouri on September 19, 2014 issued a death warrant scheduling appellant's execution for October 29.

The district court's most recent denial *again* fails to address appellant's most important argument: that his appointed attorneys have a conflict that prevents them from adequately representing his interests. Instead, the district court held that the substitution of counsel would not be in the "interests of

7

justice" because the motion was untimely—brought seven years after appellant's petition was dismissed—and because appointed counsel have not abandoned appellant in other proceedings. *See* Dist. Ct. ECF No. 102, at 1-2. The court also expressed concern that if it granted the motion, it would "set an untenable precedent in death penalty cases" by encouraging "outside attorneys" to attempt to "toll an execution date by simply waiting until the eleventh hour and then second-guessing the work of appointed counsel." *Id*. at 2.

The glaring problem with the district court's reasoning is that the strong showing of a conflict in this case—which the district court ignored—undermines all of its conclusions. Substantial evidence shows that the reason for the delay in filing has everything to do with appointed counsel's failure to disclose their error and to withdraw. Indeed, there is even evidence that counsel have been concealing their errors from their client. Thus, the conflict itself gave rise to the delay. Similarly, whether counsel abandoned appellant in other proceedings or not is irrelevant if they have an intractable conflict of interest in *these* proceedings. Conflicts of interest and abandonment constitute separate grounds for substitution of counsel—and the court below erred by addressing one and not the other. Finally, granting substitution in this case would not set an "untenable precedent" because nobody is arguing that outside attorneys can obtain tolling through mere "second-guessing"—instead, they must, at least, be

8

able to set forth a prima facie case for substitution. That was done here, yet ignored by the district court.

The district court's reasoning is also flawed on its own terms. To be sure, there has been delay. But fact-finding is necessary before the court can determine whether that delay should be attributed to appellant. Moreover, the original notice requesting conflict-free counsel was filed in May, four months before Missouri issued the death warrant. Since then, the district court has done everything in its power not to rule on the merits of appellant's argument. And the state itself has not been in a hurry, until recently, to execute appellant. His appeal from the initial dismissal of his claim was adjudicated in 2007, yet no death warrant issued until 2014. For the state now to assert a strong interest in finality is disingenuous.

The district court is also incorrect on the question of abandonment. While it is true that appointed counsel have continued to represent appellant in other proceedings, that does not speak to whether they abandoned him in connection with his best chance for relief: his own federal habeas petition. The record shows that counsel did not even meet with appellant until after the deadline to file the petition had lapsed. That they have subsequently attempted to make up for that deficiency by attempting to litigate his case elsewhere does not undo the damage that they did via textbook abandonment.

9

These merits-based considerations illustrate why it would be tragic to permit the district court's most recent order to become the final word as to whether appellant lives or dies. The lower court has, at every turn, refused to consider the meat of appellant's argument for substitution: an argument that has been well-pled and substantiated. This Court can cure that error by granting appellant's motion for a stay of execution and by adjudicating the merits of his claim. Appellant's challenge to his sentence may or may not ultimately succeed. But our system would be broken indeed if it did not even provide him with an opportunity, assisted by conflict-free counsel, to present his case to a federal court. Before our system orders appellant executed, it should at least hear from attorneys who have his best interests at heart.

## CONCLUSION

The motion for a stay of execution should be granted.

Respectfully submitted,

/s/ John McAnnar
John McAnnar
Carmody MacDonald P.C.
120 S. Central Ave.
Suite 1800
St. Louis, MO 63105
(314) 854-8662

Counsel For *Amici*

10

# ADDENDUM: FULL LIST OF *AMICI CURIAE*

**Charles F. Baird**
Judge, 299th Criminal District Court, Travis County, Texas (2007-2011); Judge, Associate Judge, Texas Court of Criminal Appeals (1991-1999).

**William G. Bassler**
Judge, United States District Court, District of New Jersey (1991-2006).

**Edward N. Cahn**
Partner, Blank Rome LLP; Judge, United States District Court for the Eastern District of Pennsylvania (1974-1998; Chief Judge, 1993-1998).

**U. W. Clemon**
Shareholder, White Arnold & Dowd, P.C.; Judge, United States District Court for the Northern District of Alabama (1980-2006; Chief Judge 1999-2006).

**Oliver E. Diaz, Jr.**
Oliver Diaz, Attorney at Law; Justice, Mississippi Supreme Court (2000-2008); Judge, Mississippi Court of Appeals (1994-2000); Member, Mississippi House of Representatives (1988-1994).

**Nancy Gertner**
Judge, United States District Court, District of Massachusetts (1994-2011).

**Karla Gray**
Chief Justice, Montana Supreme Court (2000-2008); Associate Justice (1991-2000).

**Nathaniel Jones**
Judge, United States Court of Appeals for the Sixth Circuit (1979-2002)

**Gerald Kogan**
Chief Justice, Supreme Court of Florida (1996-1998); Associate Justice (1987-1996); Judge, Eleventh Judicial Circuit of Florida (1980-1987); Assistant State Attorney, Dade County (1960-1967).

Appellate Case: 14-3389     Page: 14     Date Filed: 10/24/2014 Entry ID: 4210058

**Thomas Lambros**
United States District Judge, Northern District of Ohio (1967-1995); Chief Judge (1990-1995); Judge, Jefferson County (Ohio) Court of Common Pleas (1960-1967); United States Army Judge Advocate General's Corps (1954-1956).

**Nan Nolan**
United States Magistrate Judge, Northern District of Illinois, Eastern Division, (1998-2012).

**Stephen M. Orlofsky**
Partner, Blank Rome LLP; Judge, United States District Court, District of New Jersey (1996-2003); Magistrate Judge, United States District Court, District of New Jersey (1976-1980).

**Marsha K. Ternus**
Chief Justice, Iowa Supreme Court (2006-2010); Associate Justice (1993-2006).

**Sol Wachtler**
Chair, Law and Psychiatry Institute of North Shore Long Island Jewish Hospital; Adjunct Professor, Touro Law Center; Judge, New York Court of Appeals (1972-1992; Chief Judge, 1985-1992); Judge, New York State Supreme Court (1968-1972).

**Michael A. Wolff**
Dean, St. Louis University Law School; Chief Justice, Supreme Court of Missouri (2005-2007); Judge, Supreme Court of Missouri (1998-2011).

# CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2014, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Stephen D. Hawke
Assistant Attorney General
P.O. Box 899
Jefferson City, Missouri 65102

Eric .W. Butts
Attorney for Appellant
555 Washington Avenue, Suite 600
St. Louis, Missouri 63101

Philip M. Horwitz
Attorney for Appellant
640 Cepi Drive, Suite A
Chesterfield, Missouri 63005

Joseph J. Perkovich
PO Box 2171
New York, NY 10008
(212) 400-1660 (Tel.)

Jennifer A. Merrigan
PO Box 63928
Philadelphia, PA 19147
(816) 695-2214 (Tel.)

s/ John McAnnar
John McAnnar